791 F.2d 931
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
The Cincinnati Gas & Electric Company, Petitioner,
v.
United States Environmental Protection Agency, Respondent.
 85-3822
 United States Court of Appeals, Sixth Circuit.
 4/25/86
 
 DISMISSED
 E.P.A.
 ORDER
 Before: JONES, WELLFORD, and NELSON, Circuit Judges.
 
 
 1
 Respondent, the Environmental Protection Agency (EPA), moves this Court to dismiss the petition to review filed by Cincinnati Gas & Electric Company (CG&E). CG&E and intervenors Wisconsin Electric Power Company and Wisconsin have responded in opposition. The EPA replied to the response and the petitioners responded to the reply.
 
 
 2
 Section 402 of the Clean Water Act (the Act) establishes the National Pollutant Discharge Elimination System (NPDES) which gives the EPA the authority to regulate the discharge of pollutants into this nation's navigable waters. 33 U.S.C. Sec. 1342. No pollutant may be discharged without a NPDES permit. Sec. 301(a) of the Act, 33 U.S.C. Sec. 1311(a). In recognition of the fact that the States should take primary responsibility in controlling pollution, the Act provides for state permit programs. Sec. 402(b) of the Act, 33 U.S.C. Sec. 1342(b). Once a state permit program is approved, the EPA suspends its program. Sec. 402(c)(1) of the Act, 33 U.S.C. Sec. 1342(c)(1). However, the Administrator retains power to veto any permit which fails to comply with the Act. Sec. 402(d)(2) of the Act, 33 U.S.C. Sec. 1342(d)(2). If the state fails to comply with the Administrator's suggestions for bringing a permit into compliance, authority to issue the permit passes to the Administrator. Sec. 402(d)(4) of the Act, 33 U.S.C. Sec. 1342(d)(4).
 
 
 3
 Under the Act the EPA promulgated a new source performance standard (NSPS) for steam electric power plants and regulations governing the issuance of NPDES permits in 1974. The 1974 NSPS for point sources in the steam electric power generating category included stringent limitations for bottom ash transport water and cooling tower blowdown. The regulations regarding NPDES permits were revised in 1982. The NSPS issued in 1982 are less stringent than the 1974 NSPS. However, the EPA established an anti-backsliding policy which requires that reissued NPDES permits not contain less stringent limitations, standards, or conditions than those in a previous permit based on the 1974 NSPS. CG&E and other utilities have challenged EPA's anti-backsliding policies in cases pending in the District of Columbia Circuit. After the EPA regulations were promulgated in 1982, CG&E and other utilities sought judicial review in the Fourth Circuit pursuant to Sec. 509 of the Act, 33 U.S.C. Sec. 1369(b)(1), raising the issue of what standards should be established for new sources subject to the 1974 NSPS. The case was settled. In September, 1984 the EPA revised the procedures for issuing NPDES permits. 49 Fed. Reg. 37,998. In the 1984 revisions the EPA reaffirmed its antibacksliding policy, allowing issuance of less stringent permits only if the permittee 'can demonstrate that its removal costs are wholly disproportionate to those considered in a subsequently promulgated effluent guideline.' 49 Fed. Reg. 38,021.
 
 
 4
 CG&E applied for reissuance of a permit for its East Bend Station in Kentucky in September, 1984. The EPA issued public notice of its intent to reissue the permit, but did not take final action because the Commonwealth of Kentucky was authorized to administer the NDPES program and assumed responsibility for processing permit renewal applications. Kentucky issued a draft permit and public notice that it intended to reissue the CG& E permit. A copy of the draft permit was forwarded to the proper EPA Regional Office for review under 40 C.F.R. Sec. 123.44(a)(1). The EPA reviewed the draft and found that Kentucky had based the numerical limitations on the 1982, rather than the 1974 NSPS, contrary to the EPA's anti-backsliding policy. The EPA filed objections to the draft permit and informed Kentucky that the standards of performance for new sources for the Steam Electric Power Generating Point Source category were not relaxed or modified by the 1982 revisions. It also indicated that the 1974 NSPS was applicable to the CG&E station and had to be used as the basis for any reissued permit. The Regional Office sought guidance from the Director of EPA's Permit Division, Martha Prothro, as to whether its objections to Kentucky correctly stated the EPA's position. On July 9, 1985 the Director sent a letter to the Regional Office stating that the Regional Office had correctly stated the EPA's position (Prothro Memo). On August 27, 1985 Kentucky submitted a revised draft permit to the EPA, but it still did not comply with the 1974 NSPS requirements. On September 18, 1985 the EPA formally objected to the issuance of the permit pursuant to 40 C.F.R. Sec. 123.44(b). Subsequently, CG&E petitioned this Court for review of the EPA's objections to the issuance of the permit.
 
 
 5
 The issuance of permits by states is governed by 33 U.S.C. Sec. 1342. Section 1342(d)(2) clearly states that no permit shall issue if the Administrator objects to its issuance within 90 days of the transmittal of the proposed permit to the EPA. The state then has 90 days to modify its draft permit to address EPA objections. If it fails to do so, exclusive authority to issue the permit passes to the EPA. 40 C.F.R. Sec. 123.44. The EPA may then issue the permit under 40 C.F.R. Parts 121, 122, 124 and any other Act requirements. 40 C.F.R. Sec. 123.44(h)(1).
 
 
 6
 A party dissatisfied with the permit issued by the EPA may challenge it in an administrative adjudication pursuant to 40 C.F.R. Secs. 123.71-124.91. CG&E has not sought administrative review but contends that the Prothro Memo effectively reinstates the 1974 NSPS and constitutes rulemaking. Therefore, CG&E claims that this Court has jurisdiction to review the EPA's action under Sec. 509 of the Act, 33 U.S.C. Sec. 1369(b)(1)(E).
 
 
 7
 Upon consideration, it is concluded that the EPA's action is not reviewable at this time under 33 U.S.C. Sec. 1369(b)(1)(E). If the EPA's action is reviewable at all, it is under 33 U.S.C. Sec. 1369(b)(1)(F), which provides for the review of the issuance or denial of permits under 33 U.S.C. Sec. 1342. The Court of Appeals has been held to have jurisdiction to review the EPA's veto of a state permit under Sec. 509(b)(1)(F), 33 U.S.C. Sec. 1369(b)(1)(F). Crown Simpson Pulp v. Costle, 445 U.S. 193, 196 (1980); Republic Steel Corp. v. Costle, 581 F.2d 1228, 1230 n.1 (6th Cir. 1978), cert. denied, 440 U.S. 909 (1979); Ford Motor Co. v. EPA, 567 F.2d 661, 668 (6th Cir. 1977). Crown Simpson, Ford Motor Co., and Republic Steel are distinguishable from the instant case, however, because these cases were decided under the pre-1977 Clean Water Act. The pre-1977 law did not provide for the issuance of the permits by EPA itself, so the vetoes were unquestionably final decisions. A 1977 amendment to the Clean Water Act authorized the EPA to issue a permit itself, however, if the state failed to correct its permit draft to comply with EPA objections. In Crown Simpson, 445 U.S. at 194, n.2, the Supreme Court left open the question whether the 1977 amendment to Sec. 402 affected the jurisdiction of the Court of Appeals to review an EPA veto of a state permit. The EPA has taken the position that post-1977 vetoes are interlocutory determinations judicially reviewable only in the context of a later proceeding challenging the permit ultimately issued by the EPA. 10 Envtl. L. Rep. (Envtl. L. Inst.) 10073 et seq. (April 1980).
 
 
 8
 In the instant case, given the pendency of CG&E's challenge to EPA's anti-backsliding policy in the Court of Appeals for the District of Columbia Circuit, we think it would be premature for the Court of Appeals for the Sixth Circuit to act at this time on CG&E's petition to review. We need not now decide whether a petition by CG&E would be justiciable under Abbott Laboratories v. Gardner, 387 U.S. 136 (1967), after the validity of the anti-backsliding policy has been determined by the District of Columbia Circuit.
 
 
 9
 Accordingly, it is ORDERED that the motion to dismiss is granted without prejudice.